## BEE et al. v. BARNES.

(Circuit Court of Appeals, Fourth Circuit. November 19, 1906.)

No. 630.

TAXATION—SALE OF LAND—SEPARATE INTERESTS—TAX TITLE—VALIDITY.

Where each of two tracts of land was assessed for taxation at its true value as the property of the owner of the fee, and she paid the full amount of the taxes due thereon, notwithstanding an outstanding one-sixteenth interest in any oil that might be produced from the land, a sale of such interest for nonpayment of taxes assessed thereon was void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1267.]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

For opinion below, see 138 Fed. 476.

This was a suit instituted in the Northern district of West Virginia, the object of which is to cancel a tax deed executed on the 19th of January, 1903, by W. R. Merservie, clerk of the county court of Ritchie county of that state, to B. W. Bee for one-sixteenth interest in gas and oil and mineral on a tract of land of 69½ acres and also another tract of land of 2½ acres, making 72 acres in all. The court below has stated the facts upon which this controversy is based in a clear and succinct manner as follows:

"John K. Kelley and Clara V. Kelley, on March 29, 1898, by deed which was admitted to record April 2, 1898, conveyed to plaintiff, Barnes, a citizen of Ohio, 'one-sixteenth part of all oil and gas and other mineral substances in and under' two parcels of 69½ and 2½ acres of land, situate in Ritchie county, this state, fully described in the deed by metes and bounds, for the consideration expressed of $2,000 cash. By deed of September 21, 1898, recorded September 24, 1898, Barnes conveyed a half of this, or one thirty-second interest in all, to Mallory Bros.; but they subsequently, by deed dated March 29, 1903, reconveyed back this interest to Barnes. The surface and remaining fifteen-sixteenths undivided interest of the 'oil, gas, and other mineral substances' remained vested in Mrs. Kelley. On the land books of Ritchie

county, Mrs. Kelley, for the year 1898, was assessed with these two tracts separately, as 69½ acres and 2½ acres, in fee, as situate on 'wts. of Bonds Creek,' N. E. 9 miles from court house, valued each at $6.50 per acre, and a total valuation of $425, for the 69½ acres, instead of $451.75, the true total at that rate, and for the 2½ acre tract of $15, instead of $16.25, the true valuation at that rate. She was assessed for state purposes on the 69½ acres at the rate of 25 cents on the $100, the sum of $1.13, the full amount due on the true valuation, 6¾ cents more than due on the valuation given; 45 cents for state school purposes, at a rate of 10 cents, the correct amount on the true valuation, 2½ cents too much on the valuation given; $1.81 for county purposes, at a rate of 40 cents, the correct amount on the true valuation, 11 cents too much on the valuation given; $2.26 for road purposes and teachers' fund, respectively, each at the rate of 50 cents, the right amount on the true valuation, 12½ cents too much on each for the valuation given; and $1.36 for building fund, at a rate of 30 cents, the correct amount on the true valuation, 8½ cents too much on the valuation given. The 2½-acre tract also shows that, while the valuation was fixed at $15, instead of $16.25, the taxes were assessed upon the true valuation, and not the valuation given. These tracts had been acquired by Mrs. Kelley by different deeds from different parties. In pencil on the assessment book just after Mrs. Kelley's name is written, '1–16 oil reserve to G. W. Barnes'; but the plaintiff, although his deed bore date two days before April 1st, the assessment date fixed by law, was not assessed in any manner for that year on account of his one-sixteenth undivided interest in the 'oil, gas, and other mineral substances in and under' said two parcels of land.

"For the year 1899 Mrs. Kelley is assessed with these same two tracts separately, as having title in fee, and the same location, bearing, and distance from the courthouse is given, as also the same valuation of $6.50 per acre each, and the same erroneous total valuations of $425 and $15, respectively. This year, however, she was not assessed at the given rates upon the true total valuation, as was the case in the preceding year, but upon the false total valuations given for both years. In this last year following her name, in parenthesis, are the words, 'less one-sixteenth oil, &c.' For this year 1899, when by the records Mrs. Kelley was shown to be vested with fee-simple title in the surface of and in fifteen-sixteenths undivided interest in the 'oil, gas, and other mineral substances in and under' these two tracts, an one thirty-second of the latter, undivided, was in plaintiff, Barnes, and the remaining one thirty-second thereof was in Mallory Bros., the said Mallory Bros. were assessed with nothing, so far as shown, because of their interest; but plaintiff, Barnes, was assessed with 'one-sixteenth oil &c., reserve' in 72 acres, claimed now to be the 69½ and 2½ acre tracts consolidated, at the rate of 50 cents per acre, or a total valuation of $36, upon which taxes amounting to 78 cents in all, according to the fixed rates, were charged. These taxes were not paid by Barnes, by reason of which this interest was returned delinquent and sold by the sheriff, January 13, 1902, and purchased by defendant Bee, who paid a total for taxes and expenses of $2.35, and on the 16th day of January, 1903, had a surveyor's report made, and on January 19, 1903, received from the clerk of the county court a deed therefor, which surveyor's report and deed was on said last day admitted to record. It is to be noted that neither the report nor deed bound the 72 acres as a single tract, but simply copy the metes and bounds of the 69½ and 2½ acres, respectively, apparently from the deed of Kelley and wife to Barnes, to which both refer.

"Meanwhile, on the 20th day of October, 1902, Kelley and wife and Barnes made a lease, in which Mallory Bros. did not join, to Upham & Rolston, whereby they granted the lessees all the oil and gas in and under these lands, described as 70 acres, and described generally by reference to the abutting owners, for the period of two years, upon usual terms, for the payment of one-eighth royalties and other conditions not necessary to set forth. This lease was assigned by the lessees to Sarber Bros. & Co., and on January 14, 1903, the lease and assignment were together admitted to record. A valuable 200-barrel oil well resulted, and this one-sixteenth undivided interest became of value estimated at from $5,000 to $6,000. Defendant Bee insisted upon his being the owner of the interest under his tax deed, refusing to

surrender his claim; hence this suit, brought to set aside said tax deed as a cloud upon his title, and the appointment of a receiver herein, to whom has been paid over the proceeds arising from the sale of oil due to this interest."

Thos. P. Jacobs and Geo. W. Johnson, for appellants.

Mason G. Ambler (B. M. Ambler and C. D. Merrick, on briefs), for appellee.

Before PRITCHARD, Circuit Judge, and PURNELL and KELLER, District Judges.

PRITCHARD, Circuit Judge (after stating the facts). It appears from the record that the two tracts of land of 69½ and 2½ acres were assessed in 1898 as the property of Mrs. Kelley at $535 and $15, respectively, and these same tracts were assessed to her in 1899 at the same valuation, and she paid all of the taxes in full for the year 1899. The tax deed in question is based on an assessment for the year 1899 against Barnes; the defendant claiming title under this deed, which was executed to him by the clerk of the county court by virtue of a tax sale on account of the nonpayment by Barnes of the taxes due for the year 1899 on his undivided interest, of one-sixteenth of oil, etc., in the two tracts of land in question.

We have read and carefully considered the opinion of the court below, and fully concur in the conclusions reached therein. Inasmuch as each of the tracts of land was assessed as its true valuation for taxable purposes for the years of 1898 and 1899, as the property of Mrs. Kelley, and the full amount of the taxes due thereon by virtue of such assessment being paid by her, we are of opinion that the sale of the premises described for the nonpayment of taxes by Barnes was unauthorized, and that the deed made in pursuance of such sale is void.

For the reasons stated, the decree of the Circuit Court is therefore affirmed.

---

## THE MARS.

(Circuit Court of Appeals, Third Circuit. January 16, 1907.)

1. SEAMEN—PERSONAL INJURIES—LIABILITY OF VESSEL.

Where libelant, a fireman on a tug, was scalded while attempting to tighten the packing on the valve of an ash hoist, resulting from his turning a screw the wrong way and the machinery was not materially defective, the tug was not liable for his injuries.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, §§ 189, 186; vol. 34, Master and Servant, § 758.]

2. SAME—MEDICAL ATTENDANCE.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, §§ 39, 187.]

3. SAME.

The obligation of a vessel to furnish medical attendance, etc., to a seaman injured in her service does not end with the termination of the voyage, where there was not sufficient time or facilities for the vessel to have then performed its duty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, §§ 43, 187.]